# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GEORGE T. DUGAN, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. CIV-11-176-SPS |
| AMTEX SECURITY, INC., et al., | ) |
| Defendants. | ) |
| | |
| ROGER LANE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-11-201-SPS |
| | ) (Consolidated for pre-trial purposes) |
| AMTEX SECURITY, INC., et al., | ) |
| Defendants. | ) |

## OPINION AND ORDER GRANTING DEFENDANT AMTEX SECURITY, INC.'S MOTION FOR SUMMARY JUDGMENT

The U.S. Army contracted with Amtex, Inc. ("Amtex") for security guards at the McAlester Army Ammunition Plant in Pittsburg County, Oklahoma. Amtex employed George T. Dugan, Larry W. Durbin, Jesse R. Masters, Steven M. Ott, Alta J. Willie, Linda F. Leighton, Gary Ray, Brenda K. Broome, Harold Rider and Devonna D. Easter (the Plaintiffs in Case No. CIV-11-176-SPS), and Roger Lane (the Plaintiff in Case No. CIV-11-201-SPS) [collectively, "Plaintiffs"] as contract security guards but terminated them after they failed a newly-adopted physical test prescribed by the Army. The

Plaintiffs sued Amtex under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621-634, in the District Court of Pittsburg County, Case Nos. CJ-2011-114 and CJ-2011-137, and Amtex removed the cases to this Court. The Court consolidated the cases for pretrial purposes, and Amtex now seeks summary judgment on the Plaintiffs' claims pursuant to Fed. R. Civ. P. 56. As set forth below, the Court finds that the Defendant Amtex's Motion for Summary Judgment and Brief in Support [Docket No. 29 in Case No. CIV-11-176-SPS; Docket No. 22 in Case No. CIV-11-201-SPS] should be GRANTED.

## LAW APPLICABLE

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party must show the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S . 317, 325 (1986), with the evidence taken in the light most favorable to the non-moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

It is unlawful under the ADEA "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). In cases where there is no *direct* evidence of age discrimination, the Court applies the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) to determine if these is a question of fact, *see Jones v. Oklahoma City Public Schools*, 617 F.3d 1273, 1278-1279 (10th Cir. 2010), but the Plaintiffs bear the burden of persuasion throughout the analysis. *See Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 180 (2009).

## ANALYSIS

Amtex argues it is entitled to summary judgment because the Plaintiffs were fired not for their age but for failing a mandatory physical agility test (PAT) imposed by the Army. All Plaintiffs except Broome assert that Amtex used the PAT to replace them with younger contract security guards. Broome alleges she was fired for failing the weapons proficiency test despite passing it six months earlier, and that she was required to take a more difficult test with a faulty weapon while younger male employees were given a less stringent test with properly-functioning weapons. Amtex contends Broome was given a chance to retake the test but failed it again, that her weapon was inspected and verified by the instructors, and that she was terminated as required by its contract with the Army. Amtex has supported these contentions with evidence [Docket No. 29 ¶¶ 41-46], which Broome failed to controvert.[1] Because there is no evidence establishing a genuine dispute as to age discrimination in Broome's failure of the weapons proficiency test,

---

[1] Broome also asserts that weapons qualification was to occur annually, but regulations actually require semiannual training. *See* Army Regulation 190-56, Section 4-6(a).

Amtex is entitled to summary judgment on her claim. *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute[.]"). Further, although all of the Plaintiffs originally asserted retaliation claims, they are no longer pursuing those claims. The Court will therefore address only the disparate treatment and disparate impact claims of the remaining Plaintiffs.

### A. Factual Background

In September 2006, Amtex and the Army signed a contract (for one year with an option to renew each year for up to five years) for security guards at the McAlester Army Ammunition Plant. The contract included a Statement of Work (SOW) specifying that physical agility testing be performed in accordance with AMC Supplement 1 to Army Regulation 190-56, "The Army Civilian Police and Security Guard Program" (AR 190-56) [Docket No. 29, Ex. 2A at p. 52]. AMC Supp. 1 divided the PAT requirements by age: (i) persons up to age 50 were required to do a one-mile run in twelve minutes, thirty seconds, nine pushups in two minutes and twenty situps in two minutes; (ii) persons ages 51 to 59 were required to do the one-mile run in twenty minutes; and (iii) persons age 60 and over were required to do a 1.5-mile walk in thirty minutes [Docket No. 42 Ex. 3]. The Army revised AR 190-56 (including PAT requirements) effective October 15, 2009. The revised PAT did not divide the guards by age, but instead required all guards to do nineteen pushups in two minutes and run 1.5 miles in seventeen minutes, thirty seconds. The revision included an Alternate Events Test (AET) for guards with long-term medical

restrictions or disabilities preventing them from doing the run or pushups but otherwise allowing them to perform the essential functions of the job. The AET required a two-mile walk in thirty-two minutes and a 25-foot dummy drag instead of pushups [Docket No. 29, Ex. 2B App. D-5, filed under seal]. The Army notified Amtex in July 2009 of the coming revisions to AR 190-56 revision, including the revised PAT standards. After the revised AR 190-56 went into effect, Amtex notified the guards of the new standards and stated that they would be implemented beginning November 15, 2009 [Docket No. 42 Ex. 6], which was later changed to January 1, 2010 [Docket No. 42, Ex. 1 pp. 49-50, "Oral Deposition of Robert Lott"]. Fourteen guards failed the test twice, and Amtex terminated them as required by the Army. Of the fourteen, eleven were over the age of forty; all of the Plaintiffs were over the age of fifty. Amtex replaced the terminated employees with twenty-three new ones, all but two of whom were younger than the Plaintiffs [Docket No. 42 Ex. 7]. There is no evidence before the Court as to the number of guards retained or their ages.

Amtex allowed guard Dave Jefferson (not a plaintiff) to take the AET after failing the PAT. He was fifty-five years old at the time he attempted and failed the requirements of the newly-amended PAT on July 7, 2010, but took and passed the AET on July 10, 2010 after submitting his Army Physical Profile describing his medical condition as "History MVA 1998; status post internal fixation left hip with residual pain; ankle pain secondary to old ankle fracture" [Docket No. 52, Ex. 1]. The profile also stated that Mr. Jefferson was not to run and should be limited to forty sit-ups. The Plaintiff Durbin claims he provided a doctor's note recommending the two-mile walk because of blood

pressure problems and requested permission to take the AET, but Amtex refused because the Army's contract officer would not accept it [Docket No. 42 Ex. 8]. The Plaintiff Dugan claims he did not try to procure a release because he was told the contract officer would not allow him to take the AET even with one [Docket No. 42 Ex. 9]. No other Plaintiff submitted evidence as to eligibility to take the AET, any attempt to submit such documentation to Amtex, or any denial of the chance to take the test upon producing such documentation.

### B. Disparate Treatment

Plaintiffs bringing disparate-treatment claims "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross*, 557 U.S. at 180. Eleven of the fourteen security guards fired for failing the PAT were over forty years old. The Plaintiffs contend this was a deliberate effort to replace older guards with much younger ones, and that they were treated differently than other guards. Because there is no direct evidence of age discrimination, the Court must employ burden-shifting analysis of *McDonnell-Douglas*. The Plaintiffs must establish a *prima facie* case of age discrimination by showing that they were: (i) within the protected age group, (ii) doing satisfactory work, (iii) discharged, and (iv) replaced with younger persons. *Rivera v. City and County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004), *citing McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). The Plaintiffs meet these elements. The Plaintiffs are all over fifty, *see* 29 U.S.C. § 631(a) (protections of the ADEA apply to persons forty years old and older) and were fired. All Plaintiffs had worked for Amtex for over three years, and three had worked for over twenty, so all

were apparently doing satisfactory work; indeed, aside from failing the PAT, there is no evidence the Plaintiffs' performance was unsatisfactory. Amtex argues that the Plaintiffs were not qualified *because* they failed the PAT, but "[t]he relevant inquiry at the prima facie stage is not whether an employee or potential employee is able to meet all the objective criteria adopted by the employer, but whether the employee has introduced some evidence that she possesses the objective qualifications necessary to perform the job sought." *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000). The Plaintiffs presented evidence they performed their jobs for at least three years prior to adoption of the revised PAT, which is sufficient for purposes of establishing a *prima facie* case. *See Bolton v. Sprint/United Management Co.* 220 Fed. Appx. 761, 767 (10th Cir. 2007) (significant period of employment "alone is sufficient to establish the second element of the prima facie test."), *citing MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115, 1121 (10th Cir. 1991), *abrogated on other grounds*, *and English v. Colorado Dep't of Corrections*, 248 F.3d 1002, 1008 (10th Cir. 2001). As to the fourth element, Amtex hired twenty-three new employees to replace the fourteen who failed the PAT, including the Plaintiffs. All but two were younger than the Plaintiffs, and sixteen of the new guards were under thirty [Docket No. 42 Ex. 7]. The Court is satisfied that the Plaintiffs have carried the light burden of establishing a *prima facie* case. *See Matthews v. Denver Newspaper Agency, LLP*, 649 F.3d 1199, 1211 (10th Cir. 2011) (plaintiff's burden to establish *prima facie* case is minimal showing).

The burden next shifts to Amtex to proffer a "legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell-Douglas*, 411 U.S. at 802. At

this stage, "objective, employer-imposed qualifications that have no bearing on an applicant's ability to perform the job sought . . . are more properly considered[.]" *Horizon/CMS*, 220 F.3d at 1194. Amtex asserts that Plaintiffs were fired for failing to pass the PAT, which is required as part of its contract with the Army in order to provide adequate security at the Ammunition Plant. This is a legitimate, nondiscriminatory reason for terminating the Plaintiffs, so the Plaintiffs must now show evidence from which a reasonable jury could conclude that Amtex's proffered rationale was pretextual. *McDonnell Douglas*, 411 U.S. at 804-805. "A plaintiff produces sufficient evidence of pretext when she shows 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Jones v. Oklahoma City Public Schools*, 617 F.3d 1273, 1280 (10th Cir. 2010), *quoting Jaramillo v. Colorado Judicial Dept.*, 427 F.3d 1303, 1308 (10th Cir. 2005). "The pertinent question in determining pretext is not whether the employer was right . . . but whether that belief was genuine or pretextual." *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000) [citation omitted]. To do this, the Court "look[s] at the facts as they appear to the person making the decision to terminate[.]" *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000).

The Plaintiffs make two arguments regarding pretext. The first is that they should have been allowed to take the existing test under AMC Supp. 1 test because Amtex was not required to implement the revised PAT during the 2010 testing. The Plaintiffs note

that the contract was renewed October 1, 2009, fifteen days *before* the revised AR 190-56 went into effect, and that the new PAT thus should not have taken effect until the October 1, 2010 renewal at the earliest.[2] The Plaintiffs also contend Amtex should have requested a waiver from having to apply the new standards.[3] But the issue here is not what Amtex might have done, to avoid implementing the revised PAT, *see, e. g., Brownlee v. Lear Siegler Management Services Corp.,* 15 F.3d 976, 977-78 (10th Cir.), *cert. denied,* 512 U.S. 1237 (1994) (rejecting the argument that "[h]aving knowledge that your boss wants to discriminate and acquiescing in his discrimination (*or failing to take available remedial action*) makes the subordinate equally liable for the discrimination.") [emphasis added]; even if the Court were to accept the Plaintiffs' contract interpretation, the issue is not what Amtex was required to do under its contract with the Army, but what it *believed* it was required to do under the contract. "The court must examine the facts as they appear to the person making the decision, to determine whether the employer honestly believed those reasons and acted in good faith upon those beliefs. The court does not review the wisdom or fairness of the employer's proferred reasons. The pertinent question in determining pretext is not whether the employer was right . . . but whether that belief was

---

[2] The Plaintiffs also argue the annual contract renewals were not "major revisions" triggering implementation of the new PAT: "Current security guard contracts will not be modified for the sole purpose of including the new PAT standards into the [Statement of Work]. When current security guard contracts expire, or if there are *major modifications* to existing contracts, the new PAT standards will be incorporated into the requirements and negotiated with the contractors." AR 190-56, App. D-1(b)(3)(c) [emphasis added].

[3] "A waiver may be approved for temporary relief from a specific requirement prescribed in this regulation pending actions to conform to the requirement. A waiver may be approved for a period not to exceed 12 months and be extended only after a review of the circumstances that necessitate the extension." AR 190-56, Section 1-6(a).

genuine or pretextual." *Duvall v. Putnam City School Dist.*, 2011 WL 3739247, at *5 (W.D. Okla. August 24, 2011) (slip op.), *quoting Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1220 (10th Cir. 2007) *and Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 n.10 (10th Cir. 2007). *See, e. g.*, *Young v. Dillon Companies, Inc.*, 468 F.3d 1243, 1251 (10th Cir. 2006) ("Accordingly, while evidence amassed during discovery may well suggest that Dillon's beliefs about Mr. Young were wrong, they do not suggest those beliefs were held in bad faith."); *Guyton v. Ottawa Truck Div., Kalmar Industries U.S.A., Inc.*, 15 Fed. Appx. 571, 577 (10th Cir. 2001) ("Thus, the relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether the employer honestly believed those reasons and acted in good faith upon those beliefs."), *citing Bullington v. United Air Lines, Inc.*, 186 F.3d, 1301, 1318 (10th Cir. 1999), *overruled on other grounds*.

Amtex contends it was required to implement the revised PAT and has presented evidence to that effect, *e. g.*, an email dated July 17, 2009 describing the new PAT standards and stating that the new PAT would be implemented effective January 2010 for all guards who had already tested for 2009 [Docket No. 32 Ex. 1]. Further, a January 13, 2010 email from the U.S. Army contracting officer to Amtex's Chief Operating Officer Robert Lott detailed the new PAT standards, and stated that they were included as part of the contract's scope of work [Docket No. 32 Ex. 1]. This unrebutted evidence indicates Amtex reasonably *believed* it was required to implement the revised PAT beginning January 2010. Further, Mr. Lott stated in a deposition that he did not have "waiver capability," or the ability to discuss a waiver with the colonel at the McAlester

Ammunition Plant [Docket No. 42 Ex. 1 at 52-53]. Thus, even if the contract and the applicable regulations could be interpreted as allowing Amtex to implement the revised PAT at some date after the 2010 testing (or obtain a waiver), the Plaintiffs have produced no evidence that Amtex *believed* it could have delayed implementation or requested a waiver. *See Gross*, 557 U.S. at 176.

The Plaintiffs' second argument concerning pretext is that they should have been allowed to take the AET because Mr. Jefferson was afforded that opportunity. Viewed in the light most favorable to Plaintiffs, the evidence establishes that: (i) at least one of the Plaintiffs (Durbin) was eligible for medical reasons to take the AET; (ii) Amtex refused to allow any of the Plaintiffs to take the AET because the Army contract officer would not allow it; and (iii) a non-party who was fifty-five years old (Jefferson) *was* allowed the take the AET after submitting his Army physical profile. Unlike implementation of the revised PAT (which as discussed above the Plaintiffs claim Amtex *was not* required to do), the Plaintiffs apparently do not dispute that it was the Army's refusal (not Amtex's) that denied them an opportunity afforded to another guard. Nor do the Plaintiffs explain how such an inconsistency in application of the PAT and AET (if there was one) suggests pretext for age discrimination, given that Mr. Jefferson was older than at least three of the Plaintiffs.

Finally, the Court notes that the statistical evidence submitted by the Plaintiffs, *i. e.*, eleven of the fourteen security guards fired for failing the PAT were over forty years old, falls short of establishing age discrimination. The Plaintiffs submitted no evidence to establish the statistical makeup of the remaining workforce other than the ages of the

new hires who replaced the Plaintiffs. *See, e. g., Pippin v. Burlington Resources Oil and Gas Co.*, 440 F.3d 1186, 1197-1198 (10th Cir. 2006) ("Pippen's allegation of a statistical pattern of age discrimination—apparently inferred from the fact that fourteen of the nineteen employees terminated in the 2000 [reduction in force] were over forty—is not supported by the record. Statistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference of pretext. . . . and [here] it fails to tell us what portion of the overall Burlington workforce was over forty in order to compare whether 14/19 is an excessive percentage of over-forty terminations."), *citing Furr v. Seagate Technology, Inc.*, 82 F.3d 980, 986-987 (10th Cir. 1996).

## C. Disparate Impact

Disparate-impact claims are cognizable under the ADEA and likewise utilize a burden-shifting analysis. *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 232-240 (2005). "To establish a prima facie case of disparate impact discrimination, plaintiffs must show that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group." *Pippin v. Burlington Resources Oil and Gas Co.*, 440 F.3d 1186, 1200 (10th Cir. 2006), *citing Ortega v. Safeway Stores, Inc.*, 943 F.2d 1230, 1242 (10th Cir. 1991). *See also Smith*, 544 U.S. at 241 ("[T]he employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities."). "If the plaintiff succeeds in making a *prima facie* showing, the burden of production and persuasion of showing that the action taken was based on reasonable factors other than age shifts to the defendant." *Apsley v. Boeing*

*Co.*, 722 F. Supp. 2d 1218, 1246 (D. Kan. 2010), *citing Meacham v. Knolls Atomic Power Lab*, 554 U.S. 84, 100-102 (2008).

The Court is satisfied the Plaintiffs establish a *prima facie* case of disparate-impact discrimination by showing that implementation of the PAT fell disproportionately upon guards over the age of forty. Amtex contends, however, that it did not implement the PAT to weed out only older guards, but to satisfy the requirements of its contract with the Army and thereby provide the Ammunition Plant with guards who meet physical agility requirements. *See Meacham,* 554 U.S. at 96 ("The RFOA defense in a disparate-impact case, then, is not focused on the asserted fact that a non-age factor was at work; we assume it was. The focus of the defense is that the factor relied upon was a 'reasonable' one for the employer to be using. Reasonableness is a justification categorically distinct from the factual condition 'because of age' and not necessarily correlated with it in any particular way: a reasonable factor may lean more heavily on older workers, as against younger ones, and an unreasonable factor might do just the opposite."). The Plaintiffs acknowledge "it may be 'reasonable' to institute PAT requirements and to insist that its employees satisfy those requirements," but argue it was unreasonable for Amtex to: (i) implement the revised PAT earlier than necessary under the terms of the contract and the applicable regulations, and (ii) impose physical agility requirements not shown to be necessary to perform the Plaintiffs' jobs. On the first point, the Court is satisfied that implementation of the revised PAT when Amtex reasonably believed the Army wanted it implemented does not render otherwise reasonable physical agility requirements unreasonable. On the second point, the Plaintiffs' have presented no evidence that the

physical agility requirements of the revised PAT were not reasonable to the demands of the job aside from the fact that they were simply more demanding than the ones they replaced. *Cf. Pippin,* 440 F.3d at 1201-1202 ("Corporate restructuring, performance-based evaluations, retention decisions based on needed skills, and recruiting concerns are all reasonable business considerations. . . . Indeed, Pippin has cast no doubt on the reasonableness of these concerns at all."). Amtex is therefore entitled to summary judgment on Plaintiffs' claims of disparate impact.

## CONCLUSION

In summary, Amtex is entitled to judgment in its favor as a matter of law on the Plaintiffs' ADEA claims for disparate treatment and disparate impact. Accordingly, IT IS ORDERED that Defendant Amtex Security, Inc.'s Motion for Summary Judgment and Brief in Support [Docket No. 29 in Case No. CIV-11-176-SPS; Docket No. 22 in Case No. CIV-11-201-SPS] is hereby GRANTED.

**DATED** this 26th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma